UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RICHARD BARBO, et al.                                                                                   PLAINTIFFS

v.                                                                                  CIVIL ACTION NO. 3:07-CV-14-S

THE KROGER CO., et al.                                                                                 DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court upon the motion of the plaintiffs, Richard Barbo, et al., to remand this action to state court. Plaintiffs work in the Louisville-Kroger Distribution Center (the "Center") in Jefferson County, Kentucky and have brought suit against the defendants, The Kroger Co. ("Kroger"), Oscar Fussenegger, and Zenith Logistics, Inc., for injury suffered from the monitoring of a men's restroom in the Center by video camera. This surveillance was discovered on or about November 11, 2006, and is alleged to have occurred prior to and on that date. Plaintiffs assert claims for negligence and gross negligence, premises liability, failure to hire, train, and supervise, intentional infliction of emotional distress, and invasion of privacy.

Plaintiffs, residents of Kentucky, argue that complete diversity is destroyed by the presence of Defendant, Oscar Fussenegger, who is also a resident of Kentucky. Kroger counters that remand is inappropriate, because the court has federal question jurisdiction. It is correct.

### ANALYSIS

Kroger argues that Plaintiffs' claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because all claims will require interpretation of the applicable collective bargaining agreement ("CBA"). While Section 301 provides federal district courts jurisdiction over suits "for violation of contracts between an employer and a labor organization representing employees[]," state law claims that only "tangentially involve CBA provisions" are not preempted. *Alongi v. Ford Motor Co.*, 386 F.3d 716, 624 (6th Cir. 2004).

All of Plaintiffs' claims relate to the alleged installation of a video camera in the men's restroom at the Center. Kroger asserts that if such installation occurred, it had a legal right under the CBA to mount the camera. The applicable CBA provisions cited by Kroger include:

> (1) Section 17.1 of the "Kroger Master Agreement," which contains Kroger's commitment to maintaining a safe work environment;
>
> (2) Section 10.2 of the "Kroger Master Agreement", which provides that employees are subject to disciplinary action for various violations including dishonesty, drug use and unauthorized work stoppage;
>
> (3) Section 2, "Working Conditions" of the Local Rider, which specifies the number and duration of employee rest periods; and
>
> (4) Article 7, "Management Rights" of the "Kroger Master Agreement", which gives Kroger complete control over the management of its business and its workforce including, but not limited to, the right to establish and maintain rules governing the operation of its warehouse.

Kroger contends that pursuant to (1), (2) and (3), it arguably had a right to place a camera in the men's restroom to promote safety, to catch employees committing prohibited acts, or to ensure that employees were adhering to their break schedule. Moreover, under the "Management Rights" clause, Kroger asserts it had the right to undertake any action not regulated or excluded by other CBA provisions in furtherance of the management of the Center, including installation of any surveillance equipment. Kroger compares the situation at hand to those in *In re Amoco Petroleum Additives Co.*, 964 F.2d 706 (7th Cir. 1992) and *Sweigert v. Delmotte*, 1994 WL 724987, No. 94-7235 (E.D. Pa. 1994). We find both *Amoco* and *Sweigert* instructive.

In *Amoco*, the plaintiff made claims for invasion of privacy and intentional infliction of emotional distress after finding a camera mounted outside the women's locker room capturing those who entered and left the locker room. *Amoco*, 964 F.2d at 709. Pointing to a residual, "management rights" clause, similar to (4), the defendants argued that surveillance in the workplace is a standard condition of employment and that resolution of the plaintiff's state law claims depended upon the

meaning of that clause. *Id.* The plaintiff responded by asserting that while a collective bargaining agreement could authorize surveillance, this particular collective bargaining agreement was silent with regard to camera, locker rooms, or surveillance in general. *Id.* The Seventh Circuit sided with the defendants. It stated that the defendants had the better of the argument and that "[a] state court could not award damages without first construing the collective bargaining agreement and rejecting Amoco's interpretation of the management-rights clause." *Id.*

In *Sweigert*, the plaintiff alleged that his two supervisors entered the male employees' bathroom and viewed him using the restroom by looking through the cracks of the stall, under the stall door, and over the stall. The plaintiff asserted claims for invasion of privacy and intentional infliction of emotional distress. The defendants asserted that their surveillance was part of an investigation to catch employees violating company policy by sleeping on the job. They relied on the "management rights" provision of a collective bargaining agreement as giving them the right pursue such an investigation. In finding preemption the court stated that "the wrongfulness of the Company's actions can only be assessed through interpretation of the CBA. If the CBA gives the Company the authority to monitor its employees in the manner used by the supervisors, then the Company's actions may not be deemed unreasonable or outrageous." *Id.* at *4.

While the Sixth Circuit has not addressed Section 301 preemption based on a "management rights" clause, the Sixth Circuit has applied Section 301 preemption based on the same principles delineated in *Amoco* and *Sweigert*. According to the Sixth Circuit, a plaintiff's state law claim is preempted by Section 301 if proof of the plaintiff's claim requires interpretation of collective bargaining agreement terms. *Decoe v. Gen'l Motors Corp*, 32 F.3d 212, 216 (6th Cir. 1994). In making this determination, "the court is not bound by the 'well-pleaded complaint' rule, but rather looks to the essence of the plaintiff's claim in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *Id.*

In the case *sub judice*, Plaintiffs' claims include invasion of privacy and intentional infliction of emotional distress. The elements of both these claims will require us to interpret the CBA.[1] As did the courts in *Amoco* and *Sweigert*, we must look to the CBA to determine whether Kroger invaded Plaintiffs' privacy by employing a method that is objectionable to the reasonable person, which in this case is a union member operating under the CBA. *Proffitt v. Int'l Paper Co.*, 1998 WL 670027, No. 97-3139, *3 (6th Cir. Sept. 18, 1998). We must also look to the CBA to decide whether Kroger's alleged conduct in installing the camera was outrageous. As the Sixth Circuit recognized in *DeCoe*, "at least two federal courts of appeals have interpreted section 46 of the Restatement (2d) to require preemption when the allegedly outrageous conduct arguably was governed by CBA provisions." *Id.* at 219. If by mounting the camera, Kroger was merely pursuing their legal rights under the CBA, such conduct cannot be characterized as extreme and outrageous for purposes of establishing intentional infliction of emotional distress. *Id.* at 219-20.

We conclude that Section 301 preemption applies in this case. Thus, this court maintains original jurisdiction over this matter, and Plaintiffs' Motion to Remand must be denied. A separate order will be entered in accordance with this opinion.

---

[1] Kentucky recognizes claims for invasion of privacy, under four separate theories: (1) intrusion upon seclusion of another, (2) appropriation of another's name or likeness, (3) unreasonable publicity given to another's private life, or (4) publicity that unreasonably places another in a false light before the public. *McCall v. Courier-Journal and Louisville Times, Co.*, 623 S.W.2d 882, 887 (Ky. 1981) (citing Restatement (Second) of Torts § 652(B) (1977)). Plaintiffs argue this case as an intrusion upon seclusion, which is defined as follows: (1) an intentional intrusion by the defendant, (2) into a matter which the plaintiff has a right to keep private, (3) by the use of a method which is objectionable to the reasonable person. *Smith v. Bob Smith Chevrolet, Inc.*, 275 F.Supp.2d 808, 822 (W.D. Ky. 2002) (citing Restatement (Second) of Torts § 652(B) (1977) and noting that while no Kentucky court in a published opinion has explained in any detail the elements required to meet intrusion upon seclusion, because Kentucky has adopted the Restatement version of invasion of privacy, Kentucky's highest court would likely adopt the definitions therein).

Kentucky also recognizes intentional infliction of emotional distress, also known as the tort of outrage, where one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. *Craft v. Rice*, 671 S.W.2d 247, 251 (citing and adopting the Restatement (Second) of Torts § 46) (1965)).